**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| FRANCISCO TORRES, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CIVIL NO. 08-CV-714-WDS |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM AND ORDER**

**STIEHL, District Judge:**

Before the Court is petitioner's *pro se* motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (Doc. 1), to which the government has filed a response (Doc. 9). Petitioner also filed a motion to supplement (Doc. 7) which this Court construed as a motion to amend, and granted (Doc. 8), and the arguments contained in the supplement are considered in this Order. Additionally, petitioner has filed second and third motions to amend his § 2255 petition (Docs. 11, 12), to which the government has not filed a response.

**BACKGROUND**

On January 13, 2006, petitioner pleaded guilty without a plea agreement to conspiracy to distribute and possess with the intent to distribute at least 12,000 doses of MDMA (a drug commonly known as "Ecstasy"), in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846. Prior to sentencing, petitioner's attorney moved to exclude the Presentence Investigation Report ("PSR") and testimony concerning petitioner's criminal history and other criminal activities from the sentencing proceeding. He argued that this evidence was hearsay and that its use would

violate petitioner's rights under the Confrontation Clause. The district court denied this motion and considered the evidence at sentencing. *United States v. Torres*, Criminal No. 04-30154-WDS, 2006 WL 1388741 (S.D. Ill. May 15, 2006). On May 17, 2006, this Court sentenced petitioner to 235 months of imprisonment, a sentence at the bottom of the applicable advisory Guidelines Range. This sentence was affirmed on appeal. *United States v. Torres*, 217 F.App'x 540, 544 (7th Cir. 2007).[1] Petitioner's petition for writ of certiorari was denied by the Supreme Court on October 1, 2007. *Torres v. United States*, 552 U.S. 849 (2007).

In his petition for relief pursuant to § 2255 (Docs. 1, 2), petitioner argues that his Sixth Amendment right to effective assistance of counsel was violated because his counsel (1) failed to adequately inform him of the immediate consequences of his guilty plea, rendering his plea involuntary, (2) failed to introduce evidence to refute sentencing enhancements, namely, that petitioner used or attempted to use persons under eighteen years of age in the commission of the offense of conviction, and that petitioner threatened or attempted to threaten witnesses. In petitioner's motion to supplement his initial petition (Doc. 7), granted by this Court (Doc. 8), petitioner asserts additional ineffective assistance claims, including (3) petitioner's attorney failed to seek a plea agreement; (4) counsel failed both prior to and after the plea, to explain what would be used to enhance his sentence; (5) that counsel erroneously told petitioner that he could not withdraw his guilty plea, even though petitioner asked counsel to do so.

Petitioner's pending request to amend his § 2255 petition (Doc. 11) includes

---

[1]On direct appeal, petitioner raised a number of alleged errors of the district court, including: "(1) presuming that a sentence within the guidelines was reasonable, (2) finding that the guidelines range did not account for Torres's prior juvenile offense and that it was therefore an 'aggravating factor,' and (3)failing to take into account the full extent of Torres's 'mental illness.'" 217 F.App'x. at 541. The Court of Appeals denied relief and affirmed petitioner's sentence. *Id*. at 544.

allegations that (1) the Court did not clearly or adequately explain "waiver" of constitutional rights with respect to his plea, during the plea colloquy; (2) the Court did not clearly explain "waiver" with respect to sentencing; (3) counsel was ineffective by making an agreement with the government to waive the right to confront witnesses or present witnesses at the sentencing hearing; (4) counsel mislead him that hearsay statements by government witnesses would not increase his sentence of 120 months under the Federal Sentencing Guidelines; (5) counsel violated the American Bar Association's Model Code of Professional Responsibility (1983), specifically, Ethical Code EC 7-7, which provides that a defense attorney in a criminal case has a duty to advise his client fully regarding whether a plea to a particular charge appears desirable, and as to the prospects of success on appeal, but the client ultimately decides what plea should be entered and whether an appeal should be taken; (6) counsel was ineffective by failing to subpoena an expert witness to verify the drug amount used to increase his base offense level; (7) counsel was ineffective by failing to subpoena an expert to verify his mental capacity as borderline retarded and incapable of the mental state required to receive enhancements for the use of juveniles and threats upon a witness, possessing weapons,  and distribution of a large amount of drugs, and (8) appellate counsel was ineffective for failing to raise each of these claims on direct appeal.

In petitioner's most recent motion to amend (Doc. 12), petitioner seeks to include claims based on (1) the alleged erroneous calculation of his criminal history category in the PSR; and (2) ineffective assistance of counsel based on counsel's failure to object to the calculation of his criminal history category at sentencing.

As an initial matter, the Court must determine which of these claims it may consider.

3

The relevant statute of limitations requires that a § 2255 motion be filed within one year of "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1). "[A] direct appeal is "final" when the Supreme Court 'affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires." *Gildon v. Bowen*, 384 F.3d 883, 885 (7th Cir. 2004) (*quoting Clay v. United States*, 537 U.S. 522, 527 (2003)).

Petitioner filed a petition for a writ of certiorari, which was denied on October 1, 2007. Therefore, the deadline for filing a § 2255 motion was October 1, 2008. Petitioner filed his original § 2255 motion by placing it into the prison mailing system on October 1, 2008. Petitioner, however, has since filed three motions to amend outside of this time limit, on August 13, 2009, (Doc. 7), on October 18, 2010 (Doc. 11), and on November 10, 2011 (Doc. 12). The Court previously granted petitioner's first motion (Doc. 8), and will therefore consider all issues submitted therein. However, upon consideration of petitioner's recent motions to amend (Docs. 11, 12), the Court must dismiss some of the claims therein.

Amendments to habeas petitions may be filed outside of the one year time limit when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original" motion. Fed. R. Civ. P. 15(c)(1)(B). Any new claim made in an amended petition must be "tied to a common core of operative facts" with a claim in the original petition. *Mayle v. Felix*, 545 U.S. 644, 664 (2005). Based on this principle, some of the claims in the motions to amend (Docs. 11, 12) are time-barred.

In his initial petition, petitioner claims, in general terms, ineffective assistance based

upon failure to inform him of the consequences of a guilty plea, and failure to introduce evidence to refute sentencing enhancements.  In his first request to amend, petitioner raises additional ineffective assistance claims based upon counsel's failure to seek a plea agreement, failure to explain what could be used to enhance his sentence, and counsel's advice that petitioner could not withdraw his guilty plea.  In petitioner's pending requests to amend, however, he raises new, unrelated issues, including claims that the Court did not adequately explain waiver during the plea colloquy with respect to his plea and sentencing, and that appellate counsel was ineffective for failing to raise particular claims on appeal.  None of the facts alleged in these claims relate "in both time and type [to] those the original pleading set forth," *Mayle*, 545 U.S. at 650, but are based on entirely different facts. Therefore, the first, second, and eighth claims raised in the motion to amend (Doc. 11) are untimely, and their merits will not be considered.[2]  The Court, accordingly, **DENIES IN PART**, petitioner's motion to amend (Doc. 11), as the claims based upon the Court's explanation of waiver during the plea colloquy, the Court's explanation of waiver regarding sentencing, and the performance of appellate counsel, are time barred.

Construing petitioner's motion to amend broadly,[3] all of the other claims raised in petitioner's motion to amend (Doc. 11) generally relate back to the claims raised in his original petition.  Specifically, petitioner's claims that counsel mislead him regarding hearsay statements used to enhance his sentence, counsel violated the Model Code of Responsibility by failing to advise petitioner fully regarding his plea, counsel was ineffective for failing to subpoena an expert witness to verify the drug amount used to increase his base offense level, and counsel was

---

[2]The Court refers to its own numbering of claims as set forth on page 3 of this Order.

[3]A pro se litigant's complaint must be construed liberally, no matter how inartfully stated. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

ineffective by failing to subpoena an expert to verify petitioner's mental capacity, all relate in both time and type to petitioner's original claims of ineffective assistance raised in his original petition. Accordingly, petitioner's motion to amend (Doc. 11) is **GRANTED IN PART**, only to the extent that it relates back to petitioner's initial petition. In sum, the Court will consider petitioner's third through seventh claims raised in the motion to amend (Doc. 11) on their merits, and all other claims are time barred.

In petitioner's most recent motion to amend (Doc. 12), petitioner seeks to include claims based on (1) the alleged erroneous calculation of his criminal history category in the PSR; and (2) ineffective assistance of counsel based on counsel's failure to object to the calculation of his criminal history category at sentencing. Petitioner's argument with respect to his criminal history calculation, or the Court's determination of the application of the guidelines should have been raised on appeal at the time petitioner challenged his sentence in other respects. He did not raise this issue on appeal, and has presented no reason why he could not do so, and it is therefore procedurally defaulted. *See Barnickel v. United States*, 113 F.3d 704, 706 (7th Cir. 1997); *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996). Furthermore, petitioner's argument that counsel was ineffective for failure to object to the criminal history calculation in the PSR was not timely raised in this proceeding, and does not relate back to petitioner's timely claims. Accordingly, the Court **DENIES** petitioner's third motion to amend (Doc. 12).

Additionally, in his initial petition, petitioner requests a hearing regarding his motion pursuant to 28 U.S.C. § 2255. Because summary dismissal of a § 2255 motion is appropriate when the motion and the files and records of the case conclusively demonstrate that the petitioner is not entitled to relief, this Court **FINDS** that it is unnecessary to hold a hearing. 28

U.S.C.      § 2255(b) (2010), *see also, Politte v. United States*, 852 F.2d 924, 931 (7th Cir.

1988).

### LEGAL STANDARD

The Sixth Amendment guarantees criminal defendants the right to assistance of counsel,

which has long been interpreted as a "right to the effective assistance of counsel."  *McMann v.*

*Richardson*, 397 U.S. 759, 771 n.14 (1970).  Claims of ineffective assistance of counsel are

analyzed according to *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To prove ineffective

assistance of counsel, petitioner must show that: (1) counsel's representation fell below an

objective standard of reasonableness (the performance prong); and (2) there is a reasonable

probability that, but for counsel's professional error, the result of the proceeding would have

been different (the prejudice prong).  *See Strickland*, 466 U.S. at 694; *see also Brown v. Finnan*,

598 F.3d 416, 419 (7th Cir. 2010).

> A court does not have to analyze both prongs of the *Strickland* test.  A
> defendant's failure to satisfy either prong is fatal to his claim.  As such, "[i]f it is
> easier to dispose of an ineffectiveness claim on the ground of lack of sufficient
> prejudice,   . . . that course should be followed."

*Ebbole v. United States*, 8 F.3d 530, 533 (7th Cir. 1993) (internal citations omitted) (*quoting*

*Strickland*, 466 U.S. at 697).

 A court's review of an attorney's performance is highly deferential.  *Kimmelman v.*

*Morrison*, 477 U.S. 365, 381 (1986). "There is a strong presumption that counsel's performance

falls within the 'wide range of professional assistance.'" *Id.* (*quoting Strickland*, 466 U.S. at

689). Thus, to establish that counsel's conduct was deficient, the "defendant must overcome the

presumptions that counsel's conduct amounted to sound trial strategy, and that counsel rendered

adequate assistance and made all significant decisions in the exercise of reasonable professional

7

judgement." *United States v. Payne*, 741 F.2d 887, 891 (7th Cir. 1984) (internal citations and quotation omitted). "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all circumstances." *Kimmelman*, 477 U.S. at 381. Petitioner bears a heavy burden in showing that his counsel was ineffective and that his defense was actually prejudiced. *United States v. Holland*, 992 F.2d 687, 691 (7th Cir. 1993).

The performance prong of the *Strickland* test focuses on whether counsel's assistance was objectively unreasonable. *See Hutchings v. United States*, 618 F.3d 693, 696 (7th Cir. 2010). In order to meet the "performance" prong, petitioner "must establish specific acts or omissions of his counsel that constitute ineffective assistance. [The Court] then determine[s] whether these acts or omissions were made outside the wide range of professionally competent assistance." *Berkey v. United States*, 318 F.3d 768, 772 (7th Cir. 2003). When alleging omissions, "it is not enough to criticize counsel for failing to take particular steps. Instead, one must also address what action counsel did take, and then evaluate [his] performance as a whole." *Eckstein v. Kingston*, 460 F.3d 844, 849 (7th Cir. 2006). This reasonableness standard is not meant "to second-guess counsel's strategic decisions or 'take up the role of the Monday morning quarterback.'" *United States v. Recendiz*, 557 F.3d 511, 531 (7th Cir. 2009) (*quoting Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990)). Instead, it is meant to ascertain "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The prejudice prong of the *Strickland* test focuses on whether counsel's poor representation deprived the petitioner of a fair proceeding. *Lockhart v. Fretwell*, 506 U.S. 364,

368-69 (1993).  Under this prong, a petitioner must prove there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

"To establish prejudice in the pleading context, the petitioner must prove that there is a reasonable probability that he would not have pled guilty absent his attorney's deficient conduct."  *Hutchings*, 618 F.3d at 697 (*citing Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).  To make this showing, the defendant cannot merely assert that he would not have pled guilty but for counsel's errors, rather, the defendant must actually present objective evidence supporting this assertion.  *McCleese v. United States*, 75 F.3d 1174, 1179 (7th Cir. 1996).

<u>ANALYSIS</u>

Instead of considering petitioner's claims in the order he raised them, for the sake of both brevity and clarity, the Court will group petitioner's related claims and consider them together to the extent possible.

I.    **Claims of Ineffective Assistance With Respect to Petitioner's Decision to Plead Guilty**

**A.  Counsel (1) Failed to Inform Petitioner of the Immediate Consequences of Pleading Guilty, Rendering the Plea Involuntary; and (2) was Ignorant of the Application of the Relevant Statutory Provisions and Guideline Provisions, Which Resulted in Counsel Erroneously Advising Petitioner to Plead Guilty.**

Petitioner claims that counsel did not advise him that as a consequence of his plea, petitioner could be subject to certain sentencing enhancements based on statements of his co-conspirators.  Petitioner asserts that, had he known this, he would have proceeded to trial because the government would have had to prove certain elements beyond a reasonable doubt, and he would have had the advantage of confronting and cross-examining his accusers.

9

Petitioner asserts that the motion filed by his attorney to exclude evidence presented by co-conspirators shows that his attorney was unaware of the applicable standards, and did not adequately advise him of the standards, rendering his plea involuntary.[4]  In the motion petitioner refers to, counsel sought to bar consideration of hearsay statements at sentencing.  The motion was denied by this Court, and petitioner asserts that the motion itself shows that counsel did not know that these statements could be used at sentencing, or that petitioner's only opportunity to confront his accusers was at trial.

Petitioner further asserts that he only plead guilty because counsel insisted that he would receive significantly less time (petitioner asserts counsel told him he would receive a sentence of 120 months) and it was the only way he could avoid the statutory maximum, and that his desire to proceed to trial is obvious by looking at the record of his criminal proceedings, but does not elaborate on how the record so shows.[5]

"A reasonably competent lawyer will attempt to learn all of the relevant facts of the case, make an estimate of a likely sentence, and communicate the results of that analysis to the client before allowing the client to plead guilty."  *Bethel v. United States*, 458 F.3d 711, 717 (7th Cir. 2006).  The Supreme Court has acknowledged that the decision to plead guilty involves many uncertainties: "[b]ecause many questions about the facts and how a court or jury will apply the law to those facts cannot be answered by counsel with certitude, '[w]aiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts.'" *Id.*

---

[4]Notably, petitioner did not claim on direct appeal that his plea was involuntary.

[5]Upon review of petitioner's criminal docket, it is not at all apparent, let alone, obvious, that petitioner wished to proceed to trial.

(*quoting McMann v. Richardson*, 397 U.S. 759, 769-70 (1970)).  Furthermore, while "a gross mischaracterization of the sentencing consequences of a plea may strongly indicate deficient performance, it is not proof of deficiency."  *Bethel*, 458 F.3d at 717.  The critical question for the Court to consider is "whether counsel undertook a good-faith effort to determine the applicable facts and estimate the sentence.  An inaccurate prediction of a sentence alone is not enough to meet the standard."  *Id.*

Petitioner asserts that counsel told him he would receive a three point reduction for acceptance of responsibility as a result of pleading guilty, but he, in fact, only received a two point reduction.  He also asserts that his counsel "scared" him into pleading by telling him he could be subject to a much higher sentencing range unless he pled.  Petitioner attempts to support his claim with a number of letters from counsel.  The letters, however, indicate that counsel had adequately explained the process to petitioner (generally stating that plea agreements are negotiated with the prosecutors); explained what happens in an open plea ("the court can sentence you to anything" and generally explaining that an open plea is usually not advisable but can lead to a three point reduction for acceptance of responsibility); explained the probation officer's recommendation in comparison to their previous discussions (noting that they are very similar to each other); and that the sentencing range is below twenty years.  (*See* Doc. 7).  Counsel specifically stated:

> Reflecting on my notes of our discussion on December 6, 2005, I told you you *could* end up being an offense level 36 criminal history VI, which would have a range of 324 to 405 months.  If you plead it would *likely* be a 32 category VI, which would be a range of 210 to 262 months.  Again they have given you 2 points for acceptance of responsibility.
> . . .
>
> Again, as promised there are no enhancements filed by the government

11

and your range is below 20 years.

(Doc. 7 at 9, Ltr. dated March 20, 2006) (emphasis added).  The language in this letter indicates that petitioner, in fact, received a sentence in line with what his counsel had advised would occur, should he decide to plead.  In fact, counsel's lowest sentence estimate upon pleading noted in this letter is a sentence of 210 months, and the highest was 262 months.  Petitioner's assertion that counsel advised him that he would receive a sentence of 120 months is directly refuted, in writing, in this letter from his attorney.  Nowhere in the correspondence from counsel does it state that petitioner's sentence would likely be 120 months.

Moreover, the probation officer determined that petitioner had a base offense level of thirty, that he should receive a two level increase for the use of a weapon, a two level increase for the use of a juvenile, and a two level increase for threatening a potential witness/obstruction of justice, resulting in an offense level of thirty-six.  The probation officer determined that petitioner was eligible for a two level decrease for acceptance of responsibility, leading to a final offense level of thirty-four, and a criminal history category of V.  Finally, a statutory maximum of twenty years applied to petitioner, which resulted in a guideline range of 235-240 months.  The Court, upon consideration of all of the evidence before it, agreed with the probation officer's recommendation, and sentenced petitioner to 235 months.

While counsel's calculations did not lead to the exact same result as the probation officer or the Court, petitioner cannot claim prejudice because he was sentenced to 235 months, within the range that counsel advised would be likely.  The fact that petitioner received only a two level reduction for acceptance of responsibility instead of counsel's initial estimate that he would receive a three level reduction is not enough to deem counsel's assistance ineffective.  Petitioner

12

cannot not say that he would not have plead guilty had he been better informed because his counsel's advice was reasonably accurate, even in light of the hearsay evidence presented at petitioner's sentencing hearing that he claims he was unaware could be presented.

It appears from the letters provided by petitioner that his attorney failed to take into consideration the applicable statutory maximum. The letter from counsel further states that the government will not seek enhancements, and does not explain to the petitioner that he could be subject to certain upward adjustments that could increase his total offense level.

While counsel's prediction was not perfectly correct, there is nothing in the record or petitioner's submissions to indicate that counsel did not make a good faith effort to determine the applicable facts and estimate petitioner's sentence. An affidavit from petitioner's counsel states that he met with his client ten times before petitioner entered his plea, that counsel had spoken to his client at length about the matter before he entered his guilty plea, that petitioner entered his plea "understanding everything" and realizing that he had little to no chance of being acquitted because of "the overwhelming evidence against him," and that counsel did his best to secure the lowest possible sentence under the guidelines for petitioner (Doc. 9-1 at 1). Counsel, at the time he represented petitioner, had twenty-five years of experience with criminal cases, and based on the overwhelming evidence against petitioner, in counsel's opinion, had petitioner gone to trial, he almost certainly would have been convicted. *Id*.

Even assuming *arguendo* that counsel's advice regarding the plea was objectively unreasonable, defendant has not shown that but for counsel's erroneous advice, he would not have pled guilty but would have insisted on going to trial. *See Bethel*, 458 F.3d at 718. In the *Bethel* case, the defendant argued that he was not aware that his sentence could potentially be

enhanced under the career criminal provisions of the sentencing guidelines.  *Id.*  The Court had

warned defendant, however:

> that his sentence could be more severe than he might be expecting; that the
> government reserved the right to challenge the Guidelines computations prepared
> by the probation office; that any Guideline computation discussions were not part
> of the plea agreement; and that Bethel should not rely upon the possibly of a
> particular sentence based on Guideline computation discussions held between
> defense counsel and the government

*Id.*, and cautioned him that the Court:

> will not be able to determine the guideline sentence for your case until after the
> presentence report has been completed and . . . you have had the opportunity as
> will the government to challenge the reported facts and the application of the of
> the guidelines recommended by the probation officer and that the sentence
> imposed may be different from estimate your attorney might have given you.

*Id*.

Based upon these six or seven warnings by the court that the defendant could not rely on

any particular sentence prediction, and that the defendant stated under oath that he understood

and still proceeded to plead guilty, he affirmed

> that his guilty plea was not made in reliance of a particular sentence.  He cannot
> now be heard to complain that he would not have pled guilty if he had known his
> sentence would be more severe than his lawyer predicted.  He specifically
> disclaimed that risk at his change of plea hearing.

*Id.*

The Seventh Circuit noted that the defendant must provide more than a mere allegation

that he would have proceeded to trial in order to show prejudice, and in the *Bethel* case, the

defendant did, in fact provide more by showing "that his lawyer's prediction was mistaken by a

considerable margin."  *Id.* at 719.  In Bethel's case, the defendant's sentence was nearly double

what his lawyer had predicted, which, the Court admitted,  may have given it reason for pause,

14

had Bethel "not repeatedly insisted at his plea hearing that he was not relying on a particular sentence in entering his plea." *Id.*

Here, petitioner's counsel was reasonably accurate, with the exception of his failure to take into consideration the applicable statutory maximum, and his prediction that pleading would result in a three point reduction for acceptance of responsibility instead of only two points. Just as defendant Bethel, however, petitioner in this case repeatedly assured the Court that he was not basing his decision to plead on a particular sentence. At petitioner's change of plea hearing, this Court questioned petitioner extensively to ensure that he was aware that the applicable Guidelines range and his ultimate sentence could not be determined at the time of the plea hearing and could not be established until after the PSR had been prepared and received by the Court. The following exchange took place at the plea hearing:

> THE COURT: Now let me ask you this, has anyone made any promises or assurances of any kind to you in an attempt to induce you to plead guilty?
>
> THE DEFENDANT: No.
>
> THE COURT: Has anyone tried to force or compel you to plead guilty?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Do you understand that the offense to which you are pleading guilty is a felony offense, and that if I determine to accept your plea, that you will be adjudged guilty of that felony offense; and that as a result, you may lose certain valuable civil rights, such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess a firearm?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Okay. Now the maximum penalty provided by law for the offense to which you are pleading is imprisonment for a term of 20 years, or a fine of $1 million, or both, and a term of supervised release of at least three years, and also a special assessment of $100.

15

Now do you understand all those possible consequences of your plea?

THE DEFENDANT: Yes.

THE COURT: Have you and Mr. Delaney discussed how the advisory guidelines, Sentencing Guidelines, might apply in your case?

THE DEFENDANT: Yes, we have.

THE COURT: And do you understand that I will not be able to determine that advisory Guideline Range until after a Presentence Report has been prepared and both you and your attorney, as well as the Government's attorney, have had an opportunity to read it?

THE DEFENDANT: Yes.

THE COURT: And to also point out to me, file any legal objections that you might have to that Report?

THE DEFENDANT: Yes.

THE COURT: Okay.  And do you also understand that I can under certain circumstances impose a penalty that is either greater than or lower than that advisory range called for by the Guidelines?

THE DEFENDANT: Yes.

THE COURT: Okay. And if I would do that, do you understand that the Government may have the right to appeal from any sentence that I might impose, and that you would have that same right of appeal?

THE DEFENDANT: Yes.

(Change of Plea Tr. at 6-8).  Defendant repeatedly affirmed to the Court that he wished to plead

guilty regardless of the sentencing consequences.  Even though it appears, from counsel's letters,

that while advising the defendant, his counsel did not discuss the statutory maximum, nor did he

discuss specifically what may be used to enhance petitioner's sentence, the Court specifically

informed petitioner of the statutory maximum, and that the Court could not determine exactly

16

how the guidelines would apply in his case until the PSR was prepared.  Petitioner affirmed that he understood all of this and proceeded to plead guilty.

"Because the court takes a criminal defendant's rights at a change-of-plea hearing very seriously, it is reasonable to expect, and demand, that the criminal defendant do so as well.  For that reason, a defendant is normally bound by the representations he makes to a court during the colloquy."  *Hutchings*, 618 F.3d at 699. "Judges need not let litigants contradict themselves so readily; a motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand unless the defendant has a compelling explanation for the contradiction."  *United States v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005).   Furthermore, petitioner's "mere allegation . . . that he would have insisted on going to trial is insufficient to establish prejudice."  *United States v. Arvanitis*, 902 F.2d 489, 494-95 (7th Cir. 1990).

The petitioner cannot now complain that counsel was ineffective because petitioner was unaware of the statutory maximum, or that his sentence was different from what he expected, or that he didn't understand that enhancements may apply.  Most importantly, petitioner may not repudiate his sworn testimony and now claim that his decision to plead guilty was made in reliance on his defense counsel's assurance that he would receive a particular type of sentence.  Petitioner's sworn testimony that his plea was not made in reliance on his attorney's assurances are binding, even if his sentence is much more severe than expected.  *See Bethel*, 458 F.3d at 719.  Therefore, even if the Court assumed counsel's performance fell below an objective standard of reasonableness, petitioner has not shown that he would not have plead guilty absent counsel's error. Petitioner has not presented a basis for this Court to now find that his guilty plea was not knowingly or voluntarily made.  Petitioner's claims of ineffective assistance on these

17

bases, are therefore **DENIED**.

### B.  Counsel Violated the Model Code of Professional Conduct

Petitioner alleges that his counsel violated rules of professional conduct.  He quotes a provision from the American Bar Association's Model Code of Professional Responsibility, stating "[a] defense lawyer in a criminal case has the duty to advise his client fully on whether a particular plea to a charge appears to be desirable and as to the prospects of success on appeal, but it is for the client to decide what plea should be entered and whether an appeal should be taken."  EC 7-7 (1983).  The Seventh Circuit has stated that "in dealing with claims of ineffective assistance, '[p]revailing norms of practice as reflected in American Bar Association standards and the like . . .  are guides to determining what is reasonable, but they are only guides.'" *Johnson v. Duckworth*, 793 F.2d 898, 901-02 (7th Cir. 1986) (*quoting Strickland*, 466 U.S. at 688).

In light of petitioner's argument that his counsel provided inadequate advice concerning the consequences of his guilty plea, this Court is inclined to interpret the inclusion of this quote as legal support for that argument.  However, it is possible that petitioner intended this quote to serve as an allegation of a separate instance of ineffective assistance of counsel.  If the quote is a separate allegation, that allegation fails because petitioner has not described specific acts or omissions by his counsel.  *Berkey*, 318 F.3d at 772.  Furthermore, petitioner provided sworn testimony at his change of plea hearing that no one compelled him to plead.  (Change of Plea Tr. at 6).  Even assuming counsel's performance violated the model code and fell below an objective standard of reasonableness, as stated above, petitioner has failed to show that he was prejudiced or that he would not have pled guilty but for counsel's actions.  Petitioner's claim of ineffective

assistance based on counsel's alleged violation of the model code of professional responsibility is, therefore, **DENIED.**

### C.  Counsel Did Not Seek a Plea Agreement on Petitioner's Behalf

Petitioner asserts that counsel was ineffective in that he advised petitioner to plead guilty, but never sought a plea agreement on his behalf.  Petitioner, however, presented a letter from counsel which describes what would be entailed in seeking a plea agreement, and that counsel would have to talk to the prosecutors, and would do so if petitioner wished, but specifically stated that petitioner needed to state his request in writing.  (Doc. 7 at 8, Ltr. dated February 17, 2005).  Petitioner presents no evidence, nor does he even claim that he ever made such a request to counsel, written or otherwise.  Similarly, petitioner presents no evidence nor makes any assertions with regard to how the lack of a plea agreement was prejudicial to him.

Additionally, petitioner presents no evidence that the government offered a plea agreement, or that he would have accepted it if there were an offer.  *See Key v. United States*, 72 F.App'x 485, 487 (7th Cir. 2003).  Petitioner cannot show that, but for counsel's errors, the result would be different because he "never provided any facts to show that the government offered, or would have considered offering, any plea agreement for a lesser sentence." *Id*. at 488.  Petitioner, therefore, has failed to meet either prong of the *Strickland* test with regard to this claim, and it is, therefore, **DENIED**.

### D.  Counsel Failed to File a Motion to Withdraw the Plea on Behalf of Petitioner, Even though Petitioner Wished to Do So

Petitioner claims that after he reviewed his PSR, he contacted counsel to inform him that he wanted to retract his plea.   Petitioner submitted to the Court a letter from counsel, which

19

stated in response to petitioner's request, "that cannot be done in federal court, we are stuck." (Doc.7 at 9, Ltr. dated May 3, 2006). Petitioner also attempts to support his claim by stating that once he reviewed his PSR and became aware of the potential sentencing enhancements he faced, he then wished to withdraw his plea and proceed to trial. Petitioner states that is desire was based on his realization that the evidence that could be used to enhance his sentence was reviewed according to a different standard of proof than what would be used at trial, and that at trial he would be able to confront the witnesses who provided evidence against him. Petitioner never claims that he wished to withdraw his plea based on ineffective assistance of counsel, but only based on his apparent newfound understanding of sentencing enhancements and his rights with regard to confronting witnesses, after reviewing his PSR.

Petitioner's counsel's statement that a plea withdrawal in federal court could not be done, is not, technically, correct. A defendant may move to withdraw his plea pursuant to Fed. R. Crim. P. 11(d)(2)(B), if he shows "a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). It is unclear whether counsel meant that a plea withdrawal could never be done in federal court, or whether it could not, in counsel's professional opinion, be done in petitioner's particular circumstances for the reasons he stated. Even if the Court assumes, however, that counsel's statement that a plea withdrawal could not be done, and his failure to file a motion to withdraw the guilty plea was objectively unreasonable, petitioner has not established that he was prejudiced by counsel's failure or that the outcome would have been different.

Even if petitioner's counsel had filed a motion to withdraw the plea based on the reasoning provided by petitioner, the Court would not have granted it. The rules require a "fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). One such reason

is that the plea was involuntary. *United States v. Alvarez-Quiroga*, 901 F.2d 1433, 1436 (7th Cir. 1990). "Nonetheless, a defendant does not have an absolute right to withdraw a guilty plea, and the decision whether to allow a plea withdrawal is within the sound discretion of the district court." *Id.* Petitioner's stated basis for desiring to withdraw his plea is that after reading his PSR, he believed his sentence would be erroneously enhanced by a preponderance of the evidence standard at sentencing without his having the opportunity to discredit the persons making the statements, that the standard of proof would be higher at trial, and the jury would make particular determinations on the evidence.

This Court, however, informed petitioner of his rights with regard to confronting witnesses, at his change of plea hearing. The Court also informed petitioner that it could not determine his sentence until after the preparation of the PSR. At the change of plea hearing, the Court found that the defendant was fully competent and capable of entering an informed plea, and that his plea of guilty was knowing and voluntary, supported by an independent basis in fact with respect to each of the essential elements of the offense. (Change of Plea Tr. at 14). Petitioner entered his plea knowingly and voluntarily, and repeatedly affirmed to this Court that he understood the rights he was waiving and that his decision to plead was not based on a particular sentence. The petitioner cannot now argue, therefore, that he did not know the information upon which he wished to withdraw his plea, before actually entering his plea of guilty. The following exchange occurred at petitioner's change of plea hearing:

> THE COURT: Okay. Do you understand that you have a right to plead not guilty, and to persist in that plea; and that if you do persist in that plea, that you have a right to a trial by jury, to which you also have the right to the assistance of an attorney in your defense?

21

THE DEFENDANT: Yes.

THE COURT: And if we did have a trial, do you understand that you would have the right to see and to hear all witnesses brought against you, and to have them cross examined on your behalf?

THE DEFENDANT: Yes.

THE COURT: If there were a trial, do you also understand that you would have the right to testify, or you could decline to testify; and if you chose not to testify, that no one could compel you to testify?

THE DEFENDANT: Yes.

THE COURT: And finally, in the event of a trial, do you understand that you would have the right of subpoena or compulsory process to compel witnesses to come to court to testify in your defense?

THE DEFENDANT: Yes.

THE COURT: Okay.  You further understand that by entering a plea of guilty, if I determine to accept that plea, that you have waived or given up your right to a trial by jury, and all those other rights that I've just described to you?

THE DEFENDANT: Yes.

(Change of Plea Tr. at 8-9).  The following exchange also occurred at the change of plea hearing:

THE COURT: Have you and Mr. Delaney discussed how the advisory guidelines, Sentencing Guidelines, might apply in your case?

THE DEFENDANT: Yes, we have.

THE COURT: And do you understand that I will not be able to determine that advisory Guideline Range until after a Presentence Report has been prepared and both you and your attorney, as well as the Government's attorney, have had an opportunity to read it?

THE DEFENDANT: Yes.

THE COURT: And to also point out to me, file any legal objections that you might have to that Report?

THE DEFENDANT: Yes.

22

THE COURT: Okay.  And do you also understand that I can under certain circumstances impose a penalty that is either greater than or lower than that advisory range called for by the Guidelines?

THE DEFENDANT: Yes.

(Change of Plea Tr. at 7-8).  The Court fully explained to petitioner, therefore, his rights to proceed to trial, to confront witnesses against him, as well as to compel witnesses to support his positions.  The petitioner asserted that he understood the rights he was waiving upon pleading guilty.  Furthermore, the Court fully advised petitioner of the statutory maximum sentence applicable in his case, as well as the Court's inability to determine his particular sentence at the time of the plea.  Petitioner assured the Court that he was not pleading guilty in reliance on a particular sentence and that he understood the action he was taking.

Notably, petitioner did not claim that his plea was not voluntarily or knowingly made on appeal, nor does he claim that he was not, in fact, guilty of the charges against him, or that a meritorious defense was available that he was prevented from offering.  *See Alvarez-Quiroga*, 901 F.2d at 1439.  Had this Court considered petitioner's motion to withdraw his plea, it would have determined that "the statements he made and the answers he gave to the judge's questions at the plea hearing made clear that he understood the consequences of his plea, and thus he was precluded from withdrawing his plea."  *Fuller v. United States*, 398 F.3d 644, 646 (7th Cir. 2005).

Based upon this Court's determination that it would not have granted petitioner's motion to withdraw his plea on the basis presented, petitioner cannot show prejudice as a result of his counsel's performance, and therefore, this claim fails the *Strickland* test.  Petitioner's claim on this basis, is, therefore, **DENIED.**

**II.    Claims of Ineffective Assistance of Counsel With Respect To Petitioner's Sentence and Sentencing Hearing**

**A.  Counsel Failed to Present Evidence or Testimony to Refute Particular Sentencing Enhancements**

Petitioner claims that counsel failed to present testimony in opposition to the PSR's inclusion of enhancements for petitioner's use or attempted use of persons under eighteen years of age in the commission of the offense of conviction, and to refute the enhancements based on petitioner's threat or attempt to threaten witnesses.  Petitioner asserts that counsel's ineffective assistance resulted in prejudice to him in that his sentencing range was increased from 151-188 months to 235-240 months.

Petitioner claims that he wished to testify on his own behalf at sentencing, but counsel would not allow him to do so, leaving no evidence for the Court to weigh against the government's witness, Postal Inspector Witt's ("Witt") testimony.  Petitioner asserts that his own testimony would have been sufficient to outweigh the reliability of Witt's "uncorroborated" allegations.  Petitioner submitted an affidavit stating that he did not ask a minor to assist with the crime and that he did not make threatening statements to any witnesses or co-conspirators.  He provides no evidence to support his claims, but merely denies the activity for which his sentence was enhanced.

Additionally, petitioner claims that counsel should have subpoenaed witnesses to prove the relevant drug amount, and to prove that he had diminished mental capacity rendering him incapable of the mental state required to commit the activity described in the sentencing enhancements, including the use of juveniles, threats to witnesses, and distribution of the specified amount of drugs.  Petitioner does not state what testimony or evidence could have been

24

submitted on his behalf.

Petitioner also asserts that counsel should have called his family members as witnesses with respect to his mental capacity, to support a claim that petitioner is "borderline retarded." He also claims that counsel should have put forth his education records as evidence that petitioner did not have the mental capacity to commit the actions described in the sentencing enhancements.  Petitioner further asserts that counsel should have sought a downward departure based on his mental capabilities.

For petitioner to succeed on a claim of ineffective assistance in the sentencing context, he must show that his attorney performed deficiently, and that but for counsel's errors, there is a reasonable probability that the result would have been different.  *Fuller*, 398 F.3d at 650.  "A reasonable probability is a probability 'sufficient to undermine confidence in the outcome.'" *Tyra v. United States*, 270 F.App'x 410, 411 (7th Cir. 2008) (*citing Strickland*, 466 U.S. at 695). With regard to uncalled witnesses,  "at the very least the petitioner must submit an affidavit from the uncalled witness stating the testimony he or she would have given had they been called." *Wright v. Gramley*, 125 F.3d 1038, 1044 (7th Cir. 1997).

Petitioner seems to take issue with the Court's determination to apply the enhancements rather than any particular act or omission of counsel, and a claim of ineffective assistance does not exist in these arguments.  Furthermore, petitioner admits that counsel objected to each of the sentencing enhancements set forth in the PSR, including the possession of a firearm in connection with the offense, for using a minor in connection with the offense, and for obstruction of justice (Doc. 2 at 6).  A review of the sentencing transcript reveals that counsel also argued each of these objections, argued that Witt's testimony was based on potentially biased and self-

25

serving statements of co-conspirators, and called into question the credibility and reliability of the evidence presented by the government.  (Sentencing Tr. at 7, 15-18, 20-21, 26-31, 36-41, 42-45). The record further reveals that counsel extensively cross-examined the government's witness with respect to the activity referred to in the sentencing enhancements.  *Id*.

Petitioner does not provide the Court with any evidence, besides his own self-serving statements, that would show that his counsel's submitted objections were deficient, or that there was any evidence that would have led to a different result.  Beyond his bald denial of the activity related to his sentencing enhancements in his affidavit, petitioner has not asserted or submitted any evidence which his attorney could have put forth to refute the government's witness. Petitioner's self-serving denials of particular activities do not undermine the outcome of the sentencing proceedings, nor do they indicate that counsel should have done something more at the sentencing hearing.  The Court must assume that a decision by counsel that it would not have been in petitioner's best interest to testify at the sentencing hearing was a tactical decision made in counsel's sound professional judgment.

Regarding  petitioner's claim that counsel should have called an expert to testify at the sentencing hearing with respect to exact drug amounts involved in the crime, a review of the sentencing transcript reveals that counsel was not ineffective by failing to do so.  Petitioner admitted at his change of plea hearing that at least 6,000 ecstasy tablets were involved in his offense, and not 12,000 tablets, as set forth in the superseding indictment (Sentencing Tr. at 3-4). Notably, the amount of pills represented in the PSR, 7,758, fell within the same range as the amount of pills petitioner actually admitted to at the plea, making the findings of the PSR consistent with petitioner's own admissions.  (Sentencing Tr. at 6).  The Court cannot find,

therefore, that counsel was ineffective for failing to call an expert witness with respect to the relevant drug amounts involved.

Furthermore, with respect to petitioner's claims that counsel should have put forth evidence with respect to petitioner's mental capacity, this claim is an obvious lemon.  The Court notes that counsel did, in fact, direct the Court's attention to the two psychological reports prepared with respect to petitioner, as well as his potential disorders, his life history, his circumstances, his dependence on drugs, and his mental health treatment throughout his life. (Sentencing Tr. at 52).  Counsel asked the Court to make a downward departure in petitioner's sentence on these bases, but the Court refused to do so.  (Sentencing Tr. at 52, 56).

Petitioner claims that he suffers from "borderline retardation," yet specifically alleges that he has an I.Q. of 94.  This I.Q. falls in the low end of normal range.  *See Stanford v. Kentucky*, 492 U.S. 361, 398 (1989) (*citing* Lewis et al., *Neuropsychiatric, Psychoeducational, and Family Characteristics of 14 Juveniles Condemned to Death in the United States*, 145 Am. J. Psychiatry 584 (1988)).  Moreover, petitioner's arguments in support of his §2255 motion, for which he is representing himself, demonstrate that he is intelligent enough to grasp not only the basics of his case but also the finer points of sentencing proceedings.

Petitioner claims, however, that counsel should have argued that he lacked the mental capacity to commit the conduct resulting in the various sentencing enhancements.  Petitioner may believe that his supposed incapacity absolves him of blame for his actions, but his counsel was not obliged to give voice to such dubious arguments.  Even when assessing counsel's failure to make good arguments under the performance prong of *Strickland*, a court should refrain from acting as a "Monday morning quarterback" who second-guesses counsel's strategic decisions.

27

*Recendiz*, 557 F.3d at 531 (*quoting Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990)).  In this

case, petitioner's counsel had obvious strategic reasons for declining to present the mental

incapacity argument.  Counsel may have decided that advancing this argument would merely

have suggested that his client possesses an unattractive tendency to malinger rather than taking

responsibility for his behavior.  Such a decision would fall well within the range of reasonable

professional conduct.  *See Sanders v. United States*, No. 09-cv-0182-MJR, 2010 WL 1488554 at

*6 (S.D. Ill. April 12, 2010).  Because this argument fails on the performance prong of *Strickland*,

this Court need not address the second prong.

Where the petitioner "has failed 'to point to any evidence he would have presented that

would create a reasonable probability that the result of [his sentencing] proceedings would have

been different,' . . . [he] cannot demonstrate any possibility that he suffered prejudice as a result

of his trial counsel's performance."  *Fuller*, 398 F.3d at 652 (*quoting Berkey*, 318 F.3d at 774).

Petitioner has failed to meet either prong of the *Strickland* test on this claim, and his

claim, on this basis, is **DENIED**.

### B.  Petitioner claims that counsel made an agreement with the government to waive petitioner's right to present witnesses during sentencing

Petitioner presents no evidence to support his assertion that counsel agreed not to present

witnesses at petitioner's sentencing hearing.  There is no evidence that such an agreement

existed, and petitioner presents absolutely nothing beyond this bare assertion to support this

claim.

"An ineffective assistance of counsel claim cannot stand on a blank record, peppered

with the defendant's own unsupported allegations of misconduct."  *United States v. Hodges*, 259

F.3d 655, 660 (7th Cir. 2001).  Petitioner's claim on this basis is, therefore, **DENIED**.

28

III.    **Certificate of Appealability**

Should Petitioner desire to appeal this Court's ruling dismissing his motion under 28 U.S.C. § 2255, he must first secure a certificate of appealability, either from this Court or from the Court of Appeals.  *See* FED. R. APP. P. 22(b); 28 U.S.C. § 2253(c)(1).  Pursuant to 28 U.S.C. § 2253, a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."

This requirement has been interpreted by the Supreme Court to mean that an applicant must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Petitioner need not show that his appeal will succeed, *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003), but Petitioner must show "something more than the absence of frivolity" or the existence of mere "good faith" on his part.  *Id*. at 338 (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)).  If the district court denies the request, a petitioner may request that a circuit judge issue the certificate.  FED. R. APP. P. 22(b)(1)-(3).

For the reasons detailed above, the Court has determined that petitioner has not stated any grounds for relief under § 2255.  Furthermore, the Court finds no basis for a determination that its decision is debatable or incorrect.  Thus, Petitioner has not made "a substantial showing of the denial of a constitutional right."

**IT IS THEREFORE ORDERED** that a certificate of appealability shall **NOT** be issued.

## CONCLUSION

Accordingly, the Court **GRANTS IN PART and DENIES IN PART** petitioner's second motion to amend (Doc. 11), and **DENIES** petitioner's third motion to amend (Doc. 12).

The Court **DENIES** petitioner's motion to vacate, set aside or correct sentence on all grounds raised, and **DISMISSES** the petition with prejudice.  Each party shall bear its own costs.   A Certificate of Appealability shall **NOT** be issued.

The Clerk of the Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED**

**DATE:**  **March 29, 2012**

/s/  **WILLIAM D. STIEHL**
**DISTRICT JUDGE**